The next case for argument is 14-1003, Alcan Food Packaging v. United States. This is a case for argument 14-1003.   My name is Randy Rucker and I'm here on behalf of the plaintiff appellant, Alcan Food Packaging, Shelbyville, to discuss the proper tariff classification of their imported flexible packaging material called Flexalcon. This is a flexible aluminum conserve. That's what the name is intended to represent, is an abbreviation of those specific properties. The court below determined that this product is properly classified under the Harmonized Tariff Schedule as plastic film. We contend that it is properly classified as aluminum foil. Suppose we were to conclude that it fit under both headings. Then we would resort to a GRI 3C analysis. That's an interesting point, Your Honor, because the lower court did in fact determine that both the plastic film and the aluminum foil are indispensable. At that point in the lower court's opinion, the lower court most likely should have resorted to a GRI 3C analysis, which requires that we move to the last tariff heading of the applicable headings in numerical order. Heading 3921 applies to plastic films. Heading 7607 applies to aluminum foil. By default and legally, the classification would fall under the aluminum foil provision. Now, we can argue back and forth, and we've done this in the briefs. The government will contend that the plastic film is more indispensable. We would argue, and we have, that the aluminum foil is the most indispensable. But it looks as though you both have a point there. Correct. That each is indispensable. Right, and to the extent that we can develop such a concept of more indispensable, which in reality may not necessarily be something that we can determine. At the end of the day, if the determination from a factual standpoint is that both materials are indispensable, then the legal conclusion is that GRI 3C prevails, and the classification of this product is proper under heading 7607. On what standard should we review the Court of International Trade's conclusion that this one is more essential than the other, even though both are essential? Well, you would review that for clear error. And frankly, the facts don't support that the aluminum foil is any different from an indispensability standpoint than what the plastic may prevail. In fact, the primary characteristics that the lower court determined from the standpoint of what makes it more indispensable are nothing different than characteristics that the foil itself contains. Flexibility. You would not have a flexible packaging material unless all of the components were flexible. And strength. Strength is clearly a supporting proposition. When you look at the definition of how a laminate material is made, and when you look at aluminum foil and its definition in the tariff, and the support that it needs from a strength standpoint, specifically with the identification of backing materials, strength is a subsidiary consideration with respect to the manufacture and creation of multilayer laminate packaging materials. Wait, so you're saying that the aluminum foil fulfills the strength requirements that otherwise she found were available with regard to the plastic? Not necessarily. The aluminum foil requires additional materials because of its reduced nature. From the standpoint of quantitative review, the parties agree that's not a good basis upon which to review this product. There's an incentive to reduce the thickness, weight, and volume of the materials that are put into this particular material. But what's more important is where we begin. The design. The creation of this product starts with aluminum. Aluminum ingot, this big, rolled down to a thin aluminum foil, has absolute barrier properties even at the thin gauges. What happens, though, when you thin that down to make it more flexible, you lose some of the strength. Common industry practice is to add plastic to bolster and enhance the barrier properties that remain. So is your view they're both essential, aluminum is just more essential? Well, the answer there is no. We believe that the aluminum foil is critical and the most important. To the extent that you get to the indispensability determination at the lower courts, there you have a fork in the road. If you have indispensable products that cannot define the character, you must default to GRI 3C. Can I just ask about that? I've been fastening on to Chapter Note 1D of 76, which I basically take to happily supply a who-wins-rule when another heading and this one might otherwise apply. That is, it seems to me to say, by its terms, we defer, that is the aluminum headings, defer to another heading that applies. So that you don't get to 3C because Chapter Note 1D of Chapter 76 says you can have aluminum plus coating which stay in 76 provided that they do not thereby assume the character of articles or products of other headings. Why doesn't that essentially supply the decision rule where both chapters seem to have a fair bit of applicability? Well, it does. It does provide that rational dividing line in the cases where you can determine the character of the product. The lower court found both of the materials to be indispensable, so in their opinion, there would be no essential character, and therefore you would default to GRI 3C based upon that fact. Wait a second. If in fact we were to determine that it had the essential character of both aluminum and plastic, why wouldn't the language that Judge Toronto read to you be a problem for you? It wouldn't be a problem because it doesn't assume the character of plastic. There are no facts and evidence to support the conclusion, and the government concedes, as it must, that you cannot have flexible aluminum conserve without aluminum. I think you're questioning the assumption. There's a fair case to be made for the proposition that this does assume the character not of plastic, but rather of the heading, and the plastic heading says you can have an inside layer of metal and still be within that. So the premise then of the question is it does assume the character of the plastic heading, and why doesn't this chapter note, 1D of Chapter 76, say, well then, we defer? Sure. Because the note that you just described is found in the explanatory notes. First of all, Chapter 39 explanatory note discusses the lamination that you described where you have a metal foil that separates plastic. That's found in the general explanatory note for Chapter 39. That is not legally binding. It does not have the same legal effect. Just so we're on the same page. I thought I was reading from not an explanatory note, but Chapter Note 1D to Chapter 76. Sure. And I understand, Your Honor, there are two. We use that page A14 of the Court of International Trade Opinion. Right. So in 76 Note 1D you have the description that you've described, Your Honor, about assuming the character of an article of another heading. Well, we have to first identify the heading. And that's, in this case, Heading 3921, which covers other plastic films. But we also need to define the scope of that heading. Other plastic films does not describe flexicon. What you've identified is additional guidance found in the general explanatory notes to Chapter 39, which say that a product with a description of metal foil with plastic on either side can remain in that heading so long as it retains the essential character. Based upon the facts we've already described, it doesn't retain the essential character of plastic because of the finding that the aluminum foil is essential and critical. Suppose we disagree with you on that. Suppose we say it does fit within the plastic setting and that it has the essential character of both the aluminum heading and the plastic setting. This language would seem to say that you then lose. No? No, because at that point you haven't determined one essential character. And essential character as a concept needs to be treated as such. When you cannot define one essential character, GRI 1 no longer applies. So unless we are able to say that 76 1D provides that rational dividing line and keeps us in Chapter 76, then we default to a GRI 3C analysis. But I would have thought that one of your answers to these questions would have been that if it's backed, we don't need to worry about no 1D. We've briefed that, Your Honor, and that is certainly an issue here. The government's intention at a— But isn't that what I mean? 1D wouldn't be applicable if it came within BAC, right? Correct. And that's the basis of the government's case is essentially this. If you take aluminum foil— As I understand it, the Court of International Trade didn't decide the BAC question, right? Correct. So how are we supposed to decide the BAC question? The BAC question is whether or not the aluminum foil has the addition of materials to strengthen or support it for further processing, which is interesting because the factual determination that the lower court made was that the plastic— Well, where do we get the definition of BAC? The definition of BAC is best taken from the aluminum industry. Going back about almost 50 years, the government itself reached out to the aluminum industry and determined that BAC is essentially laminating plastic to aluminum foil. This is well established in the record evidence and well established in the production of multilayer laminate materials. So looking at the product that we have, do we have a foil? Yes. Do we have plastic materials added for strength and support? Yes. It's BAC foil by definition. Okay. Why don't we hear from the government and save you a rebuttal time? Thank you, Your Honor. May I please report? If we were to decide that it was BAC, would Chapter Heading 1D have any relevance here? Absolutely, it would, Your Honor, because under a GRI-1 analysis, you have to look at the heading along with any relevant section or chapter notes, and that's what GRI-1 says. So in that case, like all of this information, so it's not enough to just say it's BAC-ed or to not say it's BAC-ed. I'm not following that, because when I look at the Chapter 76 headings to which this refers, which talks about the processing, it doesn't refer to BAC, does it, among the surface treatments? The way you get to surface treatments, we're looking at something different. I understand how we get there, but the surface treatment doesn't talk about BAC-ed. No, it doesn't. It talks about laminated eventually. So if we decided that this was BAC-ed, why would Note 1D have any relevance here? Well, Note 1D is a chapter note, Your Honor, so what you're looking at is something... I understand that it's binding, but it doesn't mention BAC-ed. So if we decide that it's BAC-ed, why do we even look at 1D? Because that doesn't help us decide what to do if it's BAC-ed, right? Well, I respectfully disagree, Your Honor, because... Well, tell me why you disagree. Yes, thank you. Because under GRI 1, you have to look at the headings and you have to look at the relative section or chapter notes. And as Your Honor noted, there is a qualification. Well, of course we have to look at the chapter notes, but if the chapter notes don't tell us anything, they don't help us. And the problem that you have, it seems to me, with BAC-ed is that the chapter notes don't discuss BAC-ed. The chapter note does not discuss BAC-ed, but that doesn't mean that the chapter note is not a requirement that you must fulfill if you want the product to fall within 7607. Because that product, looking at the Flexicon as a whole, it must not assume the character of product of another heading. And that is a requirement that must be met. So even if you are... No, that's not what it says. It says if it's further processed, it still stays within this heading provided it doesn't assume the character of articles or products of other headings. So in order to invoke the proviso, it has to have one of these processes applied to it. Note 1-D, Your Honor, allows for certain processes which will not take it out of the provision provided that... And it doesn't list BAC as being one of those processes. No, it does not. It's like in this respect, this is where we're looking at the treatment, the surface treatment, and this is where you get to laminate it and all. But the requirement is at the end. So all of these things can apply provided that they do not thereby assume the character of articles or products of other headings. So irrespective of all these things... I understand what you're saying. But if you think about it, though, Your Honor, if I may say, if you even were to accept ALCAN's position that it is BAC, you still will need to satisfy this note in order to make sure that the Flexicon does not thereby assume the character articles of products of other headings. And if we look at the entire product as a whole, and we perform a character analysis, under traditional measures of quantity, weight, value, and thickness, plastics dominate. And if you look at the... What's your position on BAC? Why is this not BAC? It's not BAC because BAC is undefined in the tariff. So you have to look at dictionary definitions. Those dictionary definitions all say that it's supposed to be on one side, at the rear, behind. So in this case, Flexicon has a single layer that's sandwiched in between multiple layers of plastic. It is not on one side. So in that respect, it is not BAC. And the other thing is that for BAC, we also can look for instruction to the provision on copper foil, and it's not simply for the convenience of transport or handling. In this case, if you look at each of the individual plastic layers, each of those layers impart a quality that allows the entire product to be made into a durable, flexible, retortable food pouch that's used by the U.S. military for their MRE program. You can see from the military specifications, which this product was designed to fulfill, that these are very stringent specifications. You must have seals that can withstand the retort process at 250 degrees Fahrenheit for 45 to 60 minutes under extreme heat and pressure. It's like you have to have that, and you have to have the ability for that package to be subjected to any sorts of airdrop or abuse that may occur in the field. Can I just ask a follow-up question on the BACT business, which since the trial court didn't address it, I guess it's a question about the record. Is there evidence in the record about use of the term BACT where there is non-aluminum material on both sides of the aluminum, not just on one side of the aluminum? I take it your position about BACT is it's a one-sided term. Correct. And it simply doesn't cover sandwiches. Correct. Only open-faced sandwiches. Yes, Your Honor. So is there evidence in the record about usage of that term in the industry? In the industry, no, Your Honor. From what we developed in the record, deposition of both experts in this case, there is no industry definition of BACT foil. The closest that we get is something like a wrap, like a sandwich wrap where you have paper on one side and aluminum on the other. You might find that in your typical fast food restaurant, but it's not sealed. If you notice, it's something that would be more of a wrap where you fold it over, but you don't have seals. Aluminum actually cannot be sealed in these thin gauges, as we have in Flexicon, in order to withstand any of the abuse that the MRE product is subjected to. In fact, if you were to try and seal metal or an aluminum can, it would have to be as thick as a can, and that's in the record as well. I thought there was something, and maybe my recollection is wrong, but I thought there was something about industry usage of the term BACT, no? No, not for a product like this, no. I thought your friend on the other side referred to the fact that there was an industry definition. Well, he may be referring to something that was cited in a Customs Information Exchange ruling from 1965, for which there was no actual authoritative source for. It was just done by faxes. That definition, which deals with aluminum foil, It was done by faxes? Yes. It was an informal inquiry between Customs and It was faxes in 1965? Well, I believe some sort of communication. Perhaps I'm wrong, so I apologize, Your Honor. As I note, though, it's an informal sort of thing. It's not an authoritative book. But in any case, that definition had to deal with aluminum foil attached as a coherent substrate. And that definition, even if you were to look at that definition, does not go against any of the dictionary definitions that we rely on today. Substrate is still something that underlies the foil. And, again, it supports us in terms of being on one side. Is the definition of fact a fact question? For you, Your Honor, I believe it's a legal question. We tried to define fact for you in terms of industry, which there was no evidence of, and then we have provided dictionary definitions. But, again, even if you were to assume that the foil is fact, you still need to meet the requirement of Note 1D to show that it has not assumed the character or product of another heading. And in this case, because of plastics, it has assumed the character of flexible plastics under 3921. And, again, I just wanted to clarify also that you never do get to 3C in this case. GRI 1 is the one that governs. And the reason being is because GRI 1 instructs you to look at the terms of the heading along with any chapter or section notes. Even if you were to assume that the one layer of aluminum foil is something that you must consider under 7607, even if you were to start with that provision, you must look at the chapter note. And so you have to do a character analysis. But you'll never get to 3C. Would you agree that if it falls within both the plastics heading and the aluminum heading that you lose? No. No, we don't. Why not? Because you're performing a character analysis, Your Honor, under GRI 1. So in both provisions, it's very hard to avoid it because, as I said before, under Chapter 76, you have to look at Note 1D. Under 3921... But that doesn't mean that it doesn't fall under the aluminum heading. I'm saying we reject that. We say it does fall under both headings, both the aluminum heading and the plastics heading. The problem is that you have to do an essential character analysis under GRI 1. So you are required at that point to look at what the essential character is of the product as a whole. So we're looking at the relation of the constituent material in its use. So if you look at the product as a whole, which is what the trial court did, it's like then you're performing a character analysis and you're looking at what it's used for, how it's used, what enables it to be used in this way. And if you then consider that it's an MRE, we have very stringent specifications. It's like a lot of the specifications have to do with hermetic seals. Those are very special, very strong seals. They can only be done with plastics. And it must undergo a retort process. Again, very stringent, very rigorous process. Those two things, if you look at the specs, many of the more than a dozen specifications will talk about strength of seals and the durability of the pouch, of the food pouch and all that, and being sterilized. But two of those specifications only deal with barrier, which is what my colleague here says, aluminum is what it imparts. So if you take the product as a whole, and each of those plastics has specific characteristics, burst resistance, sealability, tensile strength, all kinds of things, it's like all of those things put together impart qualities that is necessary to the MRE package. Can I just add something? You haven't talked about GRI 3B, not 3C, but 3B. Does that play any role here if we got to the point of thinking that both competing headings actually applied and so GRI 1 didn't resolve it? Well, GRI 1, respectfully, Your Honor, should resolve it. I know that. Okay, it really should resolve it. Well, under 3B then, you're going to go through the same analysis as what would happen in 1, because you're looking at essential character again. For the GRI 1 analysis, because you have Note 1D and then you have the EN to Chapter 39 that requires you to look at what the essential character of the product is, you're going to be doing the same analysis. So you're going to be looking at weight, quantity, value. You're going to be looking at that. You're going to be looking at the product as a whole. You're going to be looking at the functionality. Suppose we were to conclude that it has the essential character of both plastic and aluminum. What are we supposed to do then? Well, the thing is that for an essential character analysis, you have to decide. So you have to then take a look again at the product as a whole. At the end. But doesn't the very existence of 3C mean that you can have situations where something has the essential character of two different things, namely where 3B doesn't resolve the issue? Yes, you can, Your Honor. However, in this case, you are not out of GRI 1 because what's built into the GRI 1 analysis is an essential character analysis. You have a character analysis that's required in both of the competing headings. I'm sorry, I'm not understanding what you're saying. And under GRI 1, you're supposed to look at the headings and section and chapter notes. So we know for Chapter 76, you have to look at the heading terms. We're assuming it falls under both headings. So again, GRI 1, because of the Note 1D, it requires you to take a look at what the character of the product is. And also for Chapter 39, the explanatory note there says you can have plastics combined with other materials. And in fact, the explanatory note specifically describes Lexicon, two plastic sheets with a layer of metal in between. But what it also requires is that provided that, it retains the essential character of plastics. So in effect, you can't escape an essential character analysis under GRI 1. So we won't get to B, 3B. But if you were to get to 3B, you would be employing the same analysis that you would be doing in a GRI 1 case. Are there any cases or customs rulings that recognize that you can have a situation where something has the essential character of two headings? Essential character of two headings? Of course. Yes, Your Honor. But there's also case law, and I believe it was 3M, I think, that's cited in our brief. It's that and also led by the trial court that tells you also that GRI 1 can have an essential character analysis built in. And that's what we have here. No. Thank you. Okay, thank you. Thank you, Your Honors. So BACT, what's the record show about BACT? So BACT, the record will show that the parties are in agreement, despite the contentions in the government's brief, that this product is backed on both sides. There's record evidence to that effect. The problem that we run into is that the government says, once you back an aluminum foil with films on both sides, then it's no longer BACT. It's, frankly, a ridiculous assertion, because if you had applied a film on one side... What does the record show about the industry definition of BACT? Does it show anything about it? Yeah, the industry definition is, as I've described and as the government described, based from... Where do we find that in the record? Communications from the aluminum industry are referenced in the page. There are multiple definitions of BACT from dictionary sources. That you'll find at JA 0726 to 0727. But the operative item that we want to look at for purposes of the industry definition is JA 0652 to JA 0654. And this is the customs information exchange that the government's council identified, where they communicated specifically with the aluminum industry on this issue. The issue was, what's the definition of BACT foil? Well, they reached out to the aluminum industry and got a definition. This is the definition that they've relied on for years and years until they doubled back with the aluminum industry in 1997 and confirmed that it was correct. Did this example include backing on both sides or backing on one side? That's an excellent question. They're relevant because the definition of backing has no positional reference. Well, let me just say this. In your pages in your blue brief about backing, you quote only material that uses the term substrate. I don't get anything out of those pages that suggests that you would use the term BACT in a sandwich situation. So right now I'm thinking, this is not BACT. Forget, therefore, about BACT, and we're back into Chapter Note 1D. So tell me specifically what indicates that backing is used in this, anything in this record that says backing can be on both sides. Well, there are various customs rulings we've cited where customs has recognized that very concept, despite the fact that they claim that it doesn't exist. Testimony from the government's witness that says this material is backed on both sides, and because it's backed on both sides, doesn't meet the definition of BACT in Heading 7607. What was the testimony about? So the testimony of Mr. Aaron Marks, his deposition is JA 527-577. Did you cite a specific page of that? Yes, Your Honor. 563, maybe? 563. 563. Where he says the product is not backed foil is because it is backed on both sides? Correct. So their proposition is that it's backed foil by definition, but because it has a backing on both sides of film, it can't be backed foil under Heading 7607. This is unsustainable, because the reality is, in their own rulings, if the, for example, if we had put a backing film on one side. I'm sorry, I'm not following what you're saying. He says here it's excluded from being backed foil because it's backed on both sides. So that doesn't exactly seem to help you. Well, because their definition precludes, they say it's a positional reference. They're admitting that the materials themselves are backings. It is backed. But what we're asking you is what is there that supports you, not what supports the government. Well, this supports us. Because their definition is artificially limited to a positional reference. Throughout the record, it's agreed that back is lamination. Whether or not that's true, whether or not this testimony should be ignored, I don't think it helps you, because he's not saying that it can be backed on both sides if you use a different definition. I think you'd have to rely on this customs information exchange thing, which does the product. It says the foil is coated on either one or both sides on 652. But then where is it in this ruling that tells us that if it's on both sides that it's still backed? Well, that's the question that the lower court did not address, and that's an issue in this case. You've got to show us where this ruling says it can be coated on both sides and still be backed. Does the ruling say that? The customs information exchange doesn't say that. It doesn't say that it has to be on both sides. What we see is we have record evidence. It can't be both sides, but can it be backed if it is on both sides? Yes, it can. And where does the ruling say that? I'm sorry. The customs information exchange doesn't speak to whether or not it's on both sides, which is why we've had to brief this issue. The reality is that the backing is an enhancement of the foil. It's essentially a lamination. That's what the record has established. There was testimony by numerous folks on the record that essentially described backing as a lamination for a supporting role, not a positional reference and not on one side or the other. If you look at this particular product, you have the foil and it's the foil properties that are improved upon. They are not eliminated. The enhancement of those unique and definitive characteristics is through the addition of materials to support and strengthen. Those are by definition backing materials. It is only when you apply a positional reference that the government has applied only in recent times to suit its desire to classify this product as plastic. In reality, in commercial reality, backing is not equated with a positional reference in the context of multilayer laminate materials. Okay. Any further questions, Your Honor? No. Thank you. Thank you very much.